UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| REED ELSEVIER INC., through its LEXISNEXIS Division, | : | |
| | : | Case No. 3:15-cv-256 |
| Plaintiff, | : | Judge Thomas M. Rose |
| v. | : | |
| LEGAL RESEARCH CENTER, INC., | : | |
| Defendant. | : | |

_____

**ENTRY AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO DISMISS CERTAIN COUNTERCLAIMS (DOC. 24)
AND GRANTING PLAINTIFF'S MOTION TO STRIKE THE JURY DEMAND
OF DEFENDANT LEGAL RESEARCH CENTER , INC. (DOC. 25)**
_____

This case is before the Court on the Motion to Dismiss Certain Counterclaims of Defendant Legal Research Center, Inc. ("LRC") (Doc. 24) and Motion to Strike the Jury Demand of LRC, both of which were filed by Plaintiff Reed Elsevier Inc., through its LexisNexis Division ("LexisNexis"). Both motions are fully briefed and now ripe for the Court's review. (Docs. 27, 28, 30, 31.) For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss and **GRANTS** the Motion to Strike.

**I.     BACKGROUND**

    **A. LexisNexis's First Amended Complaint and Procedural Posture**

As alleged in the First Amended Complaint, LexisNexis "collects, enhances, and provides for distribution certain licensed content, such as case law, court rules, forms, and other legal sources and documents." (Doc. 5, ¶ 5.)  On June 20, 2013, LexisNexis entered into a Data Licensing Agreement ("DLA") with LRC, in which LexisNexis granted licenses to LRC to use,

1

reproduce, and distribute certain legal content. (*Id.* at ¶ 6.) In exchange for the licenses, LRC agreed to pay license fees and to license certain tribal case law materials to LexisNexis. (*Id.*) LexisNexis alleges that it has met all of its obligations under the Agreement, but that LRC has not. Specifically, LexisNexis alleges that LRC failed to pay the license fees that are due and to provide the tribal case law materials that it agreed to license to LexisNexis. (*Id.* at ¶ 13, 16.)

On September 23, 2015, LRC brought a motion to dismiss LexisNexis's First Amended Complaint, which the Court denied on January 28, 2016. (Doc. 22.) On February 11, 2016, LRC filed its Answer and Counterclaim. (Doc. 23.) On March 3, 2016, LexisNexis filed the Motion to Dismiss Certain Counterclaims (Doc. 24) and Motion to Strike LRC's Jury Demand (Doc. 25), which are currently before the Court. Both the Motion to Dismiss and Motion to Strike were fully briefed and ripe for review as of April 7, 2016. (Docs. 27, 28, 30, 31.)

The Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. (Doc. 5, ¶ 1-2, 13.)

## B. **LRC's Answer and Counterclaim**

In its Answer, LRC admits that it entered into the DLA with LexisNexis. (Doc. 23 at 2, ¶ 6.) Nonetheless, LRC disputes the meaning of the DLA's terms and denies that it is liable for any of the claims asserted in LexisNexis's First Amended Complaint. (*Id.* at 2-3, 4-9.)

In its Counterclaim, LRC alleges that LexisNexis made false representations and withheld material information from LRC during the parties' negotiations of the DLA. LRC alleges that, as a result, it was fraudulently induced to enter into the DLA or entered into the DLA based on a unilateral mistake of fact. Alternatively, LRC alleges that LexisNexis breached the DLA, certain express and implied warranties, and the implied covenant of good faith and fair dealing. In total,

2

LRC asserts twelve claims for relief:

(1) Fraudulent Inducement by False Representation of LexisNexis's Intent, Willingness or Ability to Provide Continuous Updates to Statutes and Regulations;

(2) Fraudulent Inducement by False Representation of the Format of the Licensed Content Archive;

(3) Fraudulent Inducement by Fraudulent Omission – Concealment of LexisNexis's Inability or Unwillingness to Provide Continuous Updates of Statutes and Regulations;

(4) Fraudulent Inducement by Fraudulent Omission – Fraudulently Withholding Information about Inability or Unwillingness to Provide Primary Law Content in a Commercially Reasonable Format and Condition;

(5) Fraudulent Inducement by Fraudulent Omission – Fraudulently Withholding Information about Inability or Unwillingness to Provide Primary Law Content in Standard XML Format;

(6) Unilateral Mistake;

(7) Breach of Contract – Failure to Provide Continuous Updates;

(8) Breach of Express Warranty – Failure to Provide Licensed Content Archive in Standard XML Format;

(9) Breach of Contract – Failure to Use Reasonable Commercial Efforts to Provide Referrals;

(10) Breach of Implied Warranty of Merchantability;

(11) Breach of Implied Warranty of Fitness for a Particular Purpose; and

(12) Breach of Covenant of Good Faith and Fair Dealing.

(Doc. 23 at 18-34.)

### C. LexisNexis's Motion to Dismiss Counterclaims

LexisNexis moves to dismiss eight of the twelve counterclaims alleged by LRC.   (Doc. 24 at 1.)   First, LexisNexis argues that LRC's five fraudulent inducement claims (Counterclaims 1-5)

should be dismissed because (a) LRC fails to plead all of the elements of fraud, (b) the claims are duplicative of LRC's breach-of-contract claims, and (c) the claims are not pled with the particularity required under Fed. R. Civ. P. 9(b). (*Id.* (citing *Lam v. Am. Express Co.*, 265 F. Supp. 2d 225 (S.D.N.Y. 2003)).) Second, LexisNexis argues that LRC's claim for unilateral mistake (Counterclaim 6) fails because it cannot survive absent a valid fraud claim. (*Id.* (citing *Travelers Indem. Co. v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 498 (S.D.N.Y. 2004)).). Third, LexisNexis argues that LRC's claim for breach of the implied duty of good faith (Counterclaim 12) should be dismissed because it is duplicative of LRC's breach of contract claim. (*Id.*) Finally, LexisNexis argues that LRC's breach of express warranty claim (Counterclaim 8) should be dismissed because it is based on a promise of future performance, not a statement of present fact. (*Id.* (citing *First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 292, 690 N.Y.S.2d 17 (1st Dep't 1999)).) In sum, LexisNexis moves to dismiss LRC's Counterclaims 1-5, 6, 8, and 12.

## II. STANDARD OF REVIEW

LexisNexis brings its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Under Fed. R. Civ. P. 8(a), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this pleading standard does not require "'detailed factual allegations,'" it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all allegations of material fact as true and construes them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 554-55; *see also Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th

Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In addition to Rule 8(a)'s pleading requirements, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" under Fed. R. Civ. P. 9(b). To satisfy Rule 9(b), a plaintiff alleging fraud must "allege the time, place, and content of the [false representation] on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993). "[A]lthough courts have permitted allegations of fraud based upon information and belief, the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877-78 (6th Cir. 2006) (internal citations and quotations omitted).

### III. ANALYSIS

#### A. LRC's Fraudulent Inducement Claims – Counterclaims 1-5

##### 1. Whether LRC Pleads Reasonable Reliance

LexisNexis argues that LRC has not alleged reasonable reliance on LexisNexis's alleged misrepresentations and omissions. *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2nd Cir. 2001)

(reasonable reliance is required element to state a claim for fraud). Under New York law,[1] reasonable reliance cannot be shown where an express provision in a written contract contradicts the alleged prior representation or omission. *Clifton v. Vista Computer Servs., LLC*, No. 01 CIV. 10206 (JSM), 2002 WL 1585550, at *4 (S.D.N.Y. July 16, 2002). Reliance by "a sophisticated businessman, upon representations contrary to the plain language of the agreements he was signing . . . [is] . . . patently unreasonable." *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999) (emphasis added), aff'd *HSCB Bank v. Hales*, 4 Fed. App'x 15 (2d Cir. 2001).

In Counterclaims 1-5, LRC alleges that LexisNexis fraudulently induced it into entering the DLA by making the following misrepresentations and omissions:

- **Counterclaim 1:** "On June 13, 2013, LN's Vice President and Managing Director for Research Information, Steve Errick, on behalf of LN, sent an email to LRC's President Jim Seidl representing that under the proposed Data Licensing Agreement, LN would provide LRC with 'cases, statutes, codes and rules, including without limitation . . . federal and state statutory codes and compilations *continuously updated*.'" (Doc. 23 at 18 (emphasis in original).)

- **Counterclaim 2:** LexisNexis allegedly represented that "the Licensed Content Archive existed in standard XML format." (*Id.* at 20.)

- **Counterclaim 3:** LexisNexis allegedly "failed to inform LRC that it was unwilling or unable to provide LRC with 'continuous updates' of statutes and codes (*i.e.*, updates of statutes and codes whenever a new version was supplied or released by the pertinent government agency), that LN was not set up to do so, and that it was not cost effective for it to do so for the consideration exchanged by the parties." (*Id.* at 21.)

- **Counterclaim 4:** LexisNexis allegedly "failed to inform LRC that it was unwilling or unable to make available its primary law content to LRC in a commercially reasonable format and usable condition that would allow LRC to readily and quickly install the data and, in turn, allow it to make the licensed material available to current and potential Versuslaw subscribers in a timely manner." (*Id.* at 23.)

---

[1] Section 23 of the DLA contains a choice-of-law provision stating that it "will be governed and construed in accordance with the laws of the State of New York." (Doc. 5, ¶ 9.) The parties agree that New York law governs LRC's Counterclaims.

- **Counterclaim 5:** LexisNexis allegedly "failed to inform LRC that it was unwilling or unable to make available its primary law content to LRC in a standard XML format and condition that would allow LRC to readily and quickly install the data and, in turn, allow it to make the licensed material available to current and potential Versuslaw subscribers in a timely manner." (*Id.* at 25.)

LexisNexis's misrepresentations and omissions may be grouped into two categories: those relating to the frequency of updates to its legal content (Counterclaims 1 and 3), and those relating to the format of its legal content (Counterclaims 2, 4 and 5). LexisNexis cites provisions in the DLA addressing both of these issues, and argues that LRC could not reasonably rely on any of the alleged misrepresentations or omissions because they were contradicted by the DLA's express terms. (Doc. 24 at 6 (citing *Republic Nat'l Bank v. Hales*, 75 F. Supp. 2d 300, 315 (S.D.N.Y. 1999).) In response, LRC argues that the DLA's terms are consistent with the alleged misrepresentations and omissions.

Construing the facts alleged in the light most favorable to LRC, the DLA's terms are consistent with the alleged misrepresentations and omissions. As to the frequency of updates, LexisNexis allegedly misrepresented that it was willing and able to provide "continuous updates" of its legal content. LRC alleges that "continuous" means "updates of statutes and codes whenever a new version was supplied or released by the pertinent government agency." (Doc. 23, Counterclaim at ¶ 68.) This allegation tracks the delivery timeline set forth in the DLA, which states that caselaw will be updated daily and "all other sources" will be updated annually or when a new version is supplied or released by the pertinent government agency. (Doc. 20.)

As to format, LexisNexis allegedly misrepresented that it was able to provide content in "standard XML format" or a "commercially reasonably format." (Doc. 23, Counterclaim at ¶¶ 63, 80, 92.) The DLA's language is consistent with this allegation, as it similarly states that

7

LexisNexis will provide content in "LN's existing, standard XML format." (Doc. 20.)

In light of the consistency between the alleged misrepresentations and omissions and the DLA's language, LexisNexis's motion to dismiss LRC's fraud claims for failure to plead reasonable reliance is denied.

### 2. Whether LRC Alleges a Duty to Disclose

LexisNexis argues that LRC's claims based on fraudulent omissions fail because it has not pled that LexisNexis owed a duty to disclose to LRC. (Doc. 24 at 8-9.) In response, LRC contends that it has alleged such a duty under New York's "special facts" doctrine. (Doc. 27 at 7.)

The "special facts" doctrine provides that:

> [A]bsent a fiduciary relationship between parties, there is nonetheless a duty to disclose when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. As a threshold matter, the doctrine requires satisfaction of a two-prong test: that the material fact was information peculiarly within the knowledge of one party and that the information was not such that could have been discovered by the other party through the exercise of ordinary intelligence.

*Greenman-Pedersen, Inc. v. Berryman & Henigar, Inc.*, 14 N.Y.S.3d 20, 21-22 (N.Y. App. Div. 2015) (citations and quotation marks omitted). In addition to this two-prong test, a plaintiff also must allege that "the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 155 (2d Cir. 1995); *see also Con. Fin. Corp. v. John Morrell Co.*, 790 F. Supp. 459, 472 (S.D.N.Y. 1992).

The allegations underlying LRC's fraudulent omission claims satisfy the two-prong test set forth in *Greenman-Pedersen*. LexisNexis's willingness and ability to provide legal content on a continuous basis and in standard XML format was peculiarly within LexisNexis's knowledge. LRC alleges that LexisNexis entered into the DLA, even though it was not willing and able to

comply with its terms, because LexisNexis was "several million dollars short of its annual revenue goal" and wanted to book additional revenue before its fiscal year end. (Doc. 13, Counterclaim at ¶ 12.) LRC further alleges that LexisNexis's executives "stood to realize significant performance bonuses if LN hit its annual revenue goal for 2012-2013 fiscal year." (*Id.* at ¶ 13.) In light of these allegations, LexisNexis's entry into the DLA alone would not have revealed the alleged truth about LexisNexis's willingness and ability to provide legal content to LRC.

LRC also must allege that LexisNexis knew that LRC was acting on the basis of mistaken knowledge. *Banque Arabe et Internationale D'Investissement*, 57 F.3d at 155. LexisNexis argues that LRC has alleged nothing more than a conclusory statement of this element. (Doc. 24 at 8 (citing *Iqbal*, 556 U.S. at 678 (2009)).) LRC counters that "based on the allegations that the undisclosed information was peculiarly within LN's knowledge and that LRC did not have access to it (Countercl. ¶¶ 71, 83, 95), the Counterclaims reasonably imply that LN knew that LRC entered the DLA without the benefit of the undisclosed information and, thus, LRC entered the agreement based on mistaken or incomplete information." (Doc. 27 at 8.) LRC's suggested inference is plausible based on the facts alleged.

LRC has alleged facts invoking the special facts doctrine sufficient to withstand LexisNexis's motion to dismiss its fraud by omission claims for failure to plead a duty to disclose.

### 3. Whether LRC's Fraud Claims Are Duplicative of its Breach of Contract Claims

LexisNexis argues that all of LRC's fraud claims should be dismissed because they are duplicative of its claims for breach of contract. "It is black letter law in New York that a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract." *Clifton v. Vista Computer Servs., LLC*, No. 01 CIV. 10206 (JSM), 2002 WL 1585550, at *2

9

(S.D.N.Y. July 16, 2002) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs.*, Inc., 98 F.3d 13, 19-20 (2d Cir.1996)). There are exceptions, however, to this general rule. Under New York law, a fraud claim may be alleged in conjunction with a breach of contract claim where the plaintiff has alleged one of the following: "(1) the violation of a legal duty separate and apart from the contractual duty to perform, (2) a fraudulent representation collateral or extraneous to the contract, or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 243-44 (S.D.N.Y. 2006) (citing *Bridgestone/Firestone*, 98 F.3d at 20).

LRC's fraud claims are based on essentially the same conduct underlying its breach of contract claims. In its fraud-based Counterclaims 1 and 3, LRC alleges that LexisNexis fraudulently represented that it would provide continuous updates of its legal content. (Doc. 23, Counterclaim ¶¶ 52, 68.) In its Counterclaim 7 for breach of contract, LRC alleges that LexisNexis breached the DLA by failing to provide "continuous updates of statutes and codes." (*Id.* at ¶ 112.) In its fraud-based Counterclaims 2, 4 and 5, LRC alleges that LexisNexis fraudulently represented that it would provide its legal content in standard XML format or a "commercially reasonable format." (*Id.* at ¶¶ 63, 80, 92.) In Counterclaim 8, LRC alleges that LexisNexis breached the DLA by failing to "deliver the Licensed Content Archive in standard XML format." (*Id.* at ¶ 121.) Thus, unless LRC has alleged facts placing its fraud claims within one of the three exceptions set forth in *Bridgestone/Firestone*, they must be dismissed.

As to its fraud by omission claims (Counterclaims 3, 4 & 5), LRC has alleged—under the special facts doctrine—the violation of a duty separate and apart from LexisNexis's contractual duty to perform. Those claims therefore are not subject to dismissal as duplicative.

As to the fraudulent misrepresentation claims (Counterclaims 1 & 2), LRC argues that the

underlying allegations are actionable in fraud, as well as for breach of contract, because they are representations of present fact, not of future intent, and therefore collateral to the DLA. (Doc. 27 at 10 (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986)).) LRC's argument does not withstand scrutiny.

The statements underlying these counterclaims are not collateral to the DLA, they are express terms of the DLA. LRC relies on *Deerfield*, but the promise actionable in fraud in that case was not addressed in the contract at issue. 68 N.Y.2d at 955 (purchase order stated that it contained all the terms and conditions relating to their agreement, but omitted reference to the geographical restrictions" that were the subject of the claim for fraudulent inducement). "[U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." *Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001). This rule of law is directly applicable to LRC's first and second counterclaims and requires their dismissal here. *See also Rabin v. MONY Life Ins. Co.*, 387 Fed. App'x 36, 40 (2d Cir. 2010) (affirming dismissal of fraud claim "[b]ecause the complaint does not allege that MONY made any false representations collateral to the contract . . . the alleged false representations are the essential terms of the contract and failure by MONY to honor these terms gives rise to an action for breach of contract, not one in tort."); *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) (dismissing fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally-false statements . . . indicating [defendant's] intent to perform under the contract"); *Brown v. Kay*, 514 Fed. App'x 58, 59 (2d Cir. 2013) (same).

### 4. Whether LRC Fraud Claims Plead Damages Unique to its Fraud Claims

LRC could save its fraudulent misrepresentation claims (Counterclaims 1 & 2) from dismissal if it can show that there are special damages available on those claims that are not recoverable on its breach-of-contract claims. *Sofi*, 444 F. Supp. 2d at 243-44. LRC argues that it has made this showing because it can obtain both rescission *and* damages on its fraudulent misrepresentation claims, whereas it must choose either rescission *or* damages on its breach-of-contract claims under the election of remedies doctrine. In response, LexisNexis argues that LRC could obtain the same relief on its fraud and breach-of-contract claims, although the labels assigned to the relief might differ.

LRC is correct that, if it elects to obtain damages on its breach-of-contract claims, it would not be permitted to seek rescission of the DLA. *ESPN, Inc. v. Office of Com'r of Baseball*, 76 F. Supp. 2d 383, 387-88 (S.D.N.Y. 1999). In contrast, a plaintiff may obtain both rescission of a contract and damages on a fraud claim by statute under New York law, so long as it does not duplicate damages. N.Y. C.P.L.R. § 3002(e); *Barkley v. United Homes, Inc.*, 848 F. Supp. 2d 248, 276 (E.D.N.Y. 2012).

The difference in the available remedies does not end the inquiry, however, because the pertinent question is whether there are any special damages for fraud that LRC could not recover for breach of contract. New York courts have interpreted this question to ask whether, as a practical matter, the plaintiff could achieve the same relief on the fraud claim and breach-of-contract claim at issue. *See Sekisui Am. Corp. v. Hart*, No. 12 CIV. 3479 SAS, 2012 WL 5039682, at *7 (S.D.N.Y. Oct. 17, 2012); *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 309 (S.D.N.Y. 2010); *CAMOFI Master LDC v. College P'ship*, 452 F. Supp. 2d 462, 482 (S.D.N.Y. 2006). Thus, a comparison of the relief provided by the available remedies on each

claim is required.

"The effect of rescission 'is to declare a contract void from its inception and to put or restore the parties to status quo.'" *County of Orange v. Grier*, 817 N.Y.S.2d 146, 147 (2006) (quoting *Schwartz v. Nat'l Computer Corp.*, 345 N.Y.S.2d 579, 582 (1973)). Restoring the parties to the status quo in this case would result in the return of the $293,336 that LRC has allegedly paid LexisNexis under the DLA (Doc. 23, Counterclaim at ¶ 47) and rendering unenforceable all of the parties' rights and obligations under the DLA. Under New York law, the damages available in a fraud action are "only the actual pecuniary loss sustained as a direct result of the wrong." *Cont'l Cas. Co. v. PricewaterhouseCoopers, LLP*, 15 N.Y.3d 264, 271 (2010). LRC has not shown that these damages would be anything other than the $293,336 that it allegedly paid to LexisNexis, which would also be due in a rescission action.

If LRC prevails on its breach-of-contract claims, it could recover the same relief. Although LRC could not obtain both rescission and damages, rescission is an available remedy for breach of contract "where a party commits a material and willful breach of contract." *Sekisui Am. Corp.*, 2012 WL 5039682, at *7. If LRC instead elects to seek damages, it could still obtain the same relief because it also could seek termination of the DLA under § 4.2 (permitting termination for material breach).

In sum, LRC has not shown that there are any damages caused by LexisNexis's alleged misrepresentations that are not recoverable on its breach-of-contract claims. As a result, LRC cannot save its fraudulent misrepresentation claims from dismissal based on the availability of special damages.

### 5. Whether LRC Pleads Fraud With Requisite Particularity

LexisNexis also moves to dismiss all of LRC's fraud claims on the ground that LRC has

not pled fraud with the particularity required under Rule 9(b). LexisNexis specifically argues that LRC fails to plead with particularity "(1) facts sufficient to warrant any reasonable inference that LN knowingly made false statements or omissions; and (2) with respect to the two omissions claims, the identity of who should have declined the allegedly withheld information, and how any alleged omission was misleading." (Doc. 24 at 13-14.) As the Court has ruled that LRC's fraudulent misrepresentation claims must be dismissed, it will address this argument as to only the remaining claims for fraud by omission.

### a. Allegations that LRC Knowingly Made Omissions

LexisNexis argues that LRC fails to allege with particularity that LexisNexis "knowingly" withheld information from LRC. Rule 9(b) expressly states, however, that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." LRC has met this standard.

LRC alleges that LexisNexis knowingly withheld information about its ability to provide continuous updates and the format of its legal content. LRC alleges that, after initially declining to enter a licensing deal, LexisNexis changed its mind and quickly entered into the DLA. (Doc. 23, Counterclaim, ¶¶ 10-15.) LRC alleges that LexisNexis was neither willing nor able to meet the DLA's terms, but withheld that information from LRC so that it could close the deal and make up a shortfall in revenue before its fiscal year end. (*Id.*) In support of this interpretation of events, LRC alleges that LexisNexis's Vice President admitted to LRC, after the DLA was executed, that "LN is not currently set up to provide continuous updates to codes" because "it is too costly [for LN] to make systems modifications to do so at this time." (*Id.* at ¶ 52.) These allegations are sufficient to support a plausible inference that LexisNexis knowingly withheld information, at least with regard to its ability to provide continuous updates.

As to the format of LexisNexis's legal content, LRC alleges that LexisNexis knowingly withheld that its legal content did not exist in standard XML format. LRC alleges that, from the negotiations leading up to the DLA, LexisNexis knew that LRC needed the content to be delivered "in a commercially viable format and condition that would allow LRC's Versuslaw to make the licensed materials quickly available for reasonably prompt access by its subscribers and potential new customers." (*Id.* at ¶ 21.) It stands to reason, argues LRC, that LexisNexis knew the format of its own content—and that it was not in a "commercially viable format"—and deliberately chose not to disclose that information to LRC. Again, at the pleading stage, these allegations are sufficient to support a plausible inference that LexisNexis knowingly withheld information about the format of its legal content.

### b. Particularity of Allegations Regarding Omissions

LexisNexis argues that LRC's fraud by omission claims should be dismissed because LRC has not alleged what information was allegedly omitted and who should have made the representations. (Doc. 24 at 15 (citing *Republic Bank & Trust v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012) (stating elements of fraudulent inducement claim)).) The first argument fails because LRC alleges the specific information that was allegedly omitted. (*See* Doc. 23, Counterclaim at ¶¶ 68, 80, 92.) The second argument fails because LRC also alleges that LexisNexis is the one that should have provided the omitted information. To the extent that LexisNexis argues that LRC must identify the specific employees or agents who should have provided the omitted information, the Court agrees with LRC that it should not be held to such a high standard under Rule 9(b) at the pleading stage. *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 814-15 (S.D. Ohio 2012) ("Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by

the opposing party—in other words, Rule 9(b) does not require a plaintiff to be omniscient.") (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n. 9 (6th Cir. 1988)).

### B. LRC's Claim for Unilateral Mistake (Counterclaim 6)

LexisNexis moves to dismiss LRC's claim for unilateral mistake on the ground that such a claim "must be coupled with some fraud" under New York law. This argument is premised on the assumption that the Court would dismiss all of LRC's fraud claims. As LRC will be permitted to proceed on its fraud by omission claims, LexisNexis's argument fails.

### C. LRC's Claim for Breach of Covenant of Good Faith and Fair Dealing (Counterclaim 12)

LexisNexis moves to dismiss LRC's claim for breach of the covenant of good faith and fair dealing on the ground that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." (Doc. 24 at 17 (quoting *Travelers Indem. Co.*, 322 F. Supp. 2d at 494).) LRC argues that this claim is not duplicative of its breach-of-contract claims because the conduct at issue may constitute a breach of the implied covenant of good faith and fair dealing even if it is not prohibited by the contract. (Doc. 27 at 17 (citing *Gutierrez v. Gov't Employees Ins. Co.*, 25 N.Y.S.3d 625, 626 (N.Y. App. Div. 2016)).) LRC concedes that its claim for breach of the implied covenant is based on the same conduct underlying its breach of contract claims, but argues that it is permitted to plead the claims in the alternative under Rule 8. (Doc. 27 at 17-18.)

Under New York law, "[t]he implied covenant of good faith and fair dealing is a pledge that neither party to the contract shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruit of the contract, even if the terms of the

contract do not explicitly prohibit such conduct." *Gutierrez*, 25 N.Y.S.3d at 626. In its claim for breach of this covenant, LRC alleges that "[a] reasonable person in LRC's position would be justified in understanding that the [DLA] included promises that (a) LN would provide 'continuous updates' (i.e. updates of statutes and administrative regulations whenever a new version was supplied or released by the pertinent government agency); and (2) [sic] LN would make all licensed data available to LRC in a format and condition that was commercially reasonable and readily usable." (Doc. 23, Counterclaim, ¶ 161.) The alleged promise to provide continuous updates is nearly identical to the language in the delivery timeline set forth in the DLA, Schedule B. (Doc. 20.) To the extent LRC's claim is based on this promise, it is redundant of its breach-of-contract claims and must be dismissed. *See Travelers Indem. Co.*, 322 F. Supp. 2d at 494; *Avazpour Networking Servs., Inc. v. Falconstor Software, Inc.*, 937 F. Supp. 2d 355, 365 (E.D.N.Y. 2013).

The promise to provide content in a "commercially reasonable and readily usable" format is not identical to the analogous obligation in the DLA, which is to provide content in LexisNexis's "existing, standard XML format." LexisNexis and LRC appear to agree that standard XML format is a commercially reasonable and readily usable format. However, LRC also alleges that LexisNexis failed to provide its content in standard XML format. On the facts alleged, it is plausible that LexisNexis might be found to have met its obligation to provide content in its "existing, standard XML format," but not to have provided it in a "commercially reasonable and readily usable format." This situation may occur, for example, if the factfinder were to conclude that there is a difference between "standard XML format" and "LN's *existing* standard XML format." LRC therefore has alleged facts in which its claim for breach of the implied covenant of good faith and fair dealing would not be duplicative of its breach-of-contract claims. LRC is

17

permitted to proceed on this claim to the extent it is based on the alleged promise as to format.

### D. LRC's Claim for Breach of Express Warranty (Counterclaim 8)

LexisNexis argues that LRC's claim for breach of express warranty should be dismissed because LRC improperly bases its claim on a promise of performance, rather than a statement of present fact. (Doc. 24 at 17 (citing *First Bank of Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 292, 690 N.Y.S.2d 17 (1999)).) LRC argues that it has alleged a representation of present fact—specifically, that LexisNexis's legal content was in standard XML format. LRC alternatively argues that, under the UCC, a breach of warranty claim may be based on a seller's promise to a buyer. As LRC has sufficiently alleged the breach of an express warranty under the common law, the Court does not address LRC's argument that the UCC applies at this time.

An express warranty is defined as:

[A]n assurance by one party to a contract of the existence of a fact upon which the other party may rely. It is intended precisely to relieve the promisee of any duty to ascertain the fact for himself; it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue, for obviously the promisor cannot control what is already in the past.

*CBS Inc. v. Ziff-Davis Pub. Co.*, 75 N.Y.2d 496, 503, 553 N.E.2d 997 (1990).

LRC alleges that the following statement in the DLA regarding LexisNexis's obligation to deliver legal content constitutes an express warranty: "The Licensed Content shall be delivered to LRC in LN's existing, standard XML format." (Doc. 20, Schedule B.) According to LRC, this statement amounts to an assurance that LexisNexis's legal content exists in standard XML format. LexisNexis argues that the statement provides no such assurance, but is a promise to deliver legal content in a certain format. Construing the facts in the light most favorable to LRC, the statement amounts to both a warranty and a promise to perform.

If the DLA stated only that LexisNexis shall deliver the Licensed Content "in standard

XML format," then LexisNexis's argument would prevail. The DLA states, however, that LexisNexis shall deliver the Licensed Content in its "*existing*, standard XML format." (Doc. 20, Schedule B (emphasis added).) By adding the adjective "existing" to its description, LexisNexis further represents that its legal content currently exists in standard XML format. Of course, discovery may shed additional light on what the parties understood or LexisNexis intended by the phrase "existing, standard XML format" in the DLA. For purposes of LexisNexis's Motion to Dismiss, LRC has alleged facts sufficient to state a claim for breach of express warranty.

### IV. LEXISNEXIS'S MOTION TO STRIKE LRC'S JURY DEMAND

LexisNexis moves to strike LRC's jury demand on the ground that LRC knowingly and voluntarily waived its right to a jury trial in the DLA. (Doc. 25 at 3-4 (citing Doc. 20 at § 26).) LRC cites cases holding, under New York law, that a party alleging fraudulent inducement to enter into a contract is entitled to a jury trial, despite the presence of jury waiver provision in the contract at issue. *See, e.g., J.P. Morgan Sec. Inc. v. Ader*, 9 N.Y.S.3d 181, 184 (N.Y. App. Div. 2015). LRC's argument fails because federal law governs the determination of a contractual jury trial waiver in federal court, including in diversity cases. *Simler v. Conner*, 372 U.S. 221, 222 (1963); *K.M.C. Co. v. Irving Tr. Co.*, 757 F.2d 752, 755 (6th Cir. 1985).

In the Sixth Circuit, a contractual jury waiver applies to fraud and other tort claims, unless the fraud is alleged to have procured the jury waiver provision itself. *MSCI 2007-IQ16 Retail 9654, LLC v. Dragul*, No. 1:14-CV-287, 2014 WL 3342570, at *1 (S.D. Ohio July 8, 2014); *Baumgardner v. Bimbo Food Bakeries Distrib., Inc.*, 697 F.Supp.2d 801, 819 (N.D. Ohio 2010); *Chesterfield Exch., LLC v. Sportsman's Warehouse, Inc.*, 528 F. Supp. 2d 710, 715 (E.D. Mich. 2007). "When a contract contains an express jury waiver provision, the party objecting to that provision has the burden of demonstrating that its consent to the waiver was not knowing and

voluntary." *Baumgardner*, 697 F. Supp. 2d at 819.

Here, LRC does not allege that it was fraudulently induced to waive its right to a jury trial. To the contrary, LRC admits "that it knowingly and voluntarily agreed to the jury trial waiver provision recited in the [DLA]." (Doc. 28 at 2.) The DLA's jury waiver provision encompasses all of the claims and counterclaims alleged in this case, as it covers "any claims or legal proceedings arising out of or relating to the agreement or the subject matter hereof." (Doc. 20, § 23.) Since LRC knowingly and voluntarily agreed to the jury waiver provision and it is applicable here, LexisNexis's Motion to Strike LRC's Jury Demand is granted.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** LexisNexis's Motion to Dismiss (Doc. 24). LRC's Counterclaims 1 and 2 are **DISMISSED**. In addition, LRC is permitted to proceed on Counterclaim 12 only insofar as it is based on the alleged promise as to the format in which LexisNexis would deliver legal content. The Court **GRANTS** LexisNexis's Motion to Strike (Doc. 25) LRC's Jury Demand.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, July 5, 2016.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE